**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN STAMBERGER,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,<br><br>Defendant. | Civil Case No. 24-2360 (RJL) |

**MEMORANDUM OPINION**

November 17th, 2026 [Dkt. #22]

Plaintiff John Stamberger alleges that defendant Washington Metropolitan Area Transit Authority negligently caused him to be injured when he fell off his mobility scooter on a public bus. According to plaintiff, the bus driver ignored his request to ask other passengers to move seats so that he could park his mobility scooter and failed to ask plaintiff if he wanted his scooter to be secured. Defendant, on the other hand, argues that plaintiff was contributorily negligent and assumed the risk because he remained seated on his unsecured mobility scooter while it was facing backwards on the bus. Defendant has moved for summary judgment because plaintiff lacks an expert establishing a national standard of care for securing mobility scooters and has also moved for summary judgment on its affirmative defenses of contributory negligence and assumption of risk. For the following reasons, I will **GRANT IN PART** defendant's motion for summary judgment as

to plaintiff's failure to establish a national standard of care and **DENY IN PART** defendant's motion as to the affirmative defenses.

## BACKGROUND

### I. Facts

In November 2023, plaintiff John Stamberger ("plaintiff") and his family traveled to Washington, D.C. to visit pandas at the National Zoo. Def.'s Statement of Undisputed Material Facts ("DSUMF") [Dkt. #22-2] ¶ 2. Plaintiff rented a motorized scooter for the trip to help him get around since he had pre-existing mobility issues, including vascular and back pain. *Id.* ¶¶ 3–4. Plaintiff did not own a scooter and did not use one in his everyday life—he rented them only for trips that involved lots of walking. *Id.* ¶¶ 5–6.

On November 3, plaintiff rode a public transit bus from his hotel to the zoo without any issues. *Id.* ¶¶ 8, 11. Plaintiff boarded the bus with his scooter, parked his scooter in the handicap section of the bus, left the parked scooter, and sat in a regular bus seat with his wife. *Id.* ¶ 11. After spending the day at the zoo, plaintiff boarded another public transit bus to return to the hotel. *Id.* ¶¶ 12–13. Plaintiff again boarded the bus while seated on his scooter. *Id.* ¶ 14. The bus driver extended the accessibility ramp from the bus to the curb to allow plaintiff to board, and then the driver got up and entered the handicap section of the bus, flipped the seats so that plaintiff had room to park his scooter in the handicap section, and then returned to the driver's seat. *Id.* ¶ 15. Some passengers were seated in the area that prevented plaintiff from parking his scooter to face forward. *See* Pl.'s Statement of Disputed Material Facts in Opp'n to Def.'s Mot. for Summ. J. ("PSMF") [Dkt. #24-1] ¶ 1. Plaintiff asked the driver to ask the seated passengers to stand up so that

plaintiff could turn his scooter around, but the driver did not answer. *Id.* Plaintiff remained seated on the scooter while it faced the back of the bus; the scooter was not secured or attached in any way. DSUMF ¶¶ 19–20. There were empty and available seats on the bus that plaintiff could have moved to, but he remained seated on his scooter. *Id.* ¶ 24.

After pulling away from the stop, the bus made approximately five to seven more stops through heavy traffic. *Id.* ¶ 22. At some point, the bus slowed down, and plaintiff fell off the back of his scooter onto the floor of the bus, sustaining injuries. *Id.* ¶ 29; *see also* Compl. [Dkt. #1-3] ¶ 16.

## II. Procedural History

On July 23, 2024, plaintiff sued defendant the Washington Metropolitan Area Transit Authority ("WMATA" or "defendant") in D.C. Superior Court, bringing a single claim of negligence. *See* Compl. [Dkt. #1-3]. On August 15, 2024, defendant removed the case to this Court. *See* Notice of Removal [Dkt. #1]. The parties proceeded to discovery. *See* Minute Order (May 22, 2025).[1]

On May 12, 2026, defendant moved for summary judgment and attached a statement of undisputed facts. *See* Mot. for Summ. J. [Dkt. #22]; Def.'s Mem. of P. & A. in Supp. of Its Mot. for Summ. J. ("Mem.") [Dkt. #22-1]; DSUMF. On June 2, 2026, plaintiff filed his opposition to defendant's motion. Mem. in Opp'n ("Opp'n") [Dkt. #24]. Plaintiff attached his own Statement of Disputed Material Facts [Dkt. #24-1] but did not file any response to defendant's Statement of Undisputed Material Facts. On June 16, 2026, defendant filed its

---

[1] This Court has subject-matter jurisdiction pursuant to the WMATA Compact. *See Robinson v. Washington Metro. Area Transit Auth.*, 774 F.3d 33, 37 (D.C. Cir. 2014) (citing D.C. Code § 9–1107.01(81)).

reply in support of its motion for summary judgment. *See* Def.'s Reply to Pl.'s Opp'n ("Reply") [Dkt. #26]. The motion is now ripe.

## LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists when there is sufficient "evidence on which the jury could reasonably find for the [non-movants]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). When deciding a motion for summary judgment, the Court "must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." *Dist. Intown Props. Ltd. P'ship. v. Dist. of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999).

## ANALYSIS

Defendant has moved for summary judgment on three issues: failure to establish the standard of care with expert testimony and the affirmative defenses of contributory negligence and assumption of risk. I will grant summary judgment to defendant on the first issue and deny summary judgment as to the affirmative defenses because they involve factual issues for trial.

### I. Compliance with Local Civil Rule 7(h)

As an initial matter, Federal Rule of Civil Procedure 56(c) provides that a "party asserting that a fact . . . is genuinely disputed must support the assertion by[] citing to

particular parts of materials in the record." Fed. R. Civ. P. 56(c). Local Civil Rule 7(h) provides that a party opposing a summary judgment motion must supply a "separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). The "Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.* "If the party opposing the motion fails to comply with this local rule, then the district court is under no obligation to sift through the record and should instead deem as admitted the moving party's facts that are uncontroverted by the nonmoving party's Rule LCvR 7.1(h) statement." *S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000) (cleaned up).

Plaintiff filed his own statement of undisputed material facts but failed to respond to defendant's statement. *See* PSMF. Defendant's statement of facts—which provides a step-by-step accounting of what happened—is therefore considered undisputed.

## II. Standard of Care

"Under District of Columbia law, a plaintiff seeking to prove her case through direct evidence of negligence has the burden of establishing three elements: (1) 'the applicable standard of care'; (2) 'a deviation from that standard by the defendant'; and (3) 'a causal relationship' between the deviation and the injury she suffered." *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 38 (D.C. Cir. 2014) (quoting *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C. 2006)). The standard of care is typically the

"traditional reasonable person standard," but "where 'the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson,' the plaintiff must proffer expert testimony to establish the applicable standard of care." *Id.* at 39 (quoting *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009)). "Put differently, an expert is necessary unless the subject matter is 'within the realm of common knowledge and everyday experience' of average jurors." *Id.* (quoting *Godfrey*, 559 F.3d at 572). The expert must "show that the particular practice at issue reflects a *national* standard of care." *Id.*

Courts applying D.C. law have routinely required expert testimony to establish the standard of care in bus safety cases. *See, e.g.*, *Robinson v. Wash. Metro. Area Transit Auth.*, 941 F. Supp. 2d 61, 67 (D.D.C. 2013), *aff'd*, 774 F.3d 33 (D.C. Cir. 2014); *Bush v. Wash. Metro. Area Transit Auth.*, 2020 WL 921419, at *4 (D.D.C. Feb. 26, 2020). The only exception is when "everyday experience makes it clear that jurors could not reasonably disagree over the care required." *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007).

Accordingly, when "a plaintiff seeks to establish standards regarding the specific procedures that public transit bus operators should follow . . . a plaintiff must present expert testimony, as the standards governing the operation of city buses are distinctly related to an occupation that is 'beyond the ken of the average layperson.'" *Robinson*, 941 F. Supp. 2d at 67 (quoting *Briggs*, 481 F.3d at 845). In *Robinson*, the district court held that expert testimony was required to establish whether the bus driver should have "check[ed] the internal center mirror before releasing the brakes" and "ma[de] an announcement before

pulling away from the bus stop," as well as whether the driver "fail[ed] to start the bus gradually and stop smoothly." *Id.* at 72.[2] Similarly, my colleagues have required expert testimony when the driver allegedly "parked too far away from the sidewalk and failed to lower or 'kneel' the bus before letting passengers disembark," *Graham v. Wash. Metro. Area Transit Auth.*, 2024 WL 1178470, at *1 (D.D.C. Mar. 19, 2024), and when the driver allegedly failed to "position the front door of the bus within six inches of the curb, *Thomas v. Wash. Metro. Area Transit Auth.*, 2024 WL 4103706, at *5 (D.D.C. Sept. 6, 2024); *see also Montgomery v. Wash. Metro. Area Transit Auth.*, 2026 WL 880250, at *2 (D.C. Cir. Mar. 31, 2026) (affirming grant of summary judgment to WMATA when the plaintiff lacked expert testimony establishing "a duty to warn passengers about a berthing adjustment that might cause a Metro train to jerk forward").

When the standard of care involves "assist[ing] passengers with disabilities or special needs," "such operations" are "even further outside the realm of common knowledge and necessitate[] the testimony of a competent expert to articulate the governing standard of care." *Bush v. Wash. Metro. Area Transit Auth.*, 2020 WL 921419, at *4 (D.D.C. Feb. 26, 2020) (expert testimony needed in case involving an elderly plaintiff with a walker who fell in a patch of grass after exiting a specialized MetroAccess van).

Plaintiff argues that "the only questions regarding [the] standard of care" are "should

---

[2] Our Circuit Court later questioned whether expert testimony was required to "determine[e] whether it is reasonable to start a motor vehicle without checking to make sure one's passengers are secure." *Robinson*, 774 F.3d at 39. This dicta has no relevance here, where the question of whether and how the bus driver should have secured plaintiff's mobility scooter is significantly more complex. *See, e.g.*, *Levai v. Washington Metro. Area Transit Auth.*, 2022 WL 17325624, at *3 (D. Md. Nov. 28, 2022) (granting summary judgment to WMATA for lack of expert testimony establishing "how an automatic wheelchair ramp . . . should be operated" on a bus).

the driver have asked the passengers to move out of Plaintiff's way when parking his scooter" and "should the driver have secured the scooter or at least asked Plaintiff if he wanted the scooter and/or himself secured?" Opp'n at 5. Defendant poses numerous questions about the standard of care, including "[w]hen does a passenger who takes a scooter on a transit bus need to be secured in the scooter—if at all?" and "[a]re there even 'securements' on the transit bus to secure a scooter the type of which Plaintiff was using at the time of the alleged incident?" Mem. at 13. Regardless of the framing, these questions are all "beyond the ken of the average layperson" under D.C. law. *Briggs*, 481 F.3d at 845. Plaintiff identifies no source establishing a national standard of care for responding to a mobility-limited passenger's requests for assistance to ask other passengers to move, for example.

Plaintiff's argument that WMATA's internal operating procedures establish the standard of care is easily dispensed with. "Violations of procedures prescribed by an agency's internal manual . . . are insufficient in themselves to establish the standard of care, as 'a defendant cannot be held liable for aspiring to efforts beyond an applicable national standard.'" *Robinson*, 941 F. Supp. 2d at 68 (quoting *Varner*, 891 A.2d at 269–70). "To hold otherwise would create the perverse incentive for [defendant] to write its internal operating procedures in such a manner as to impose minimal duties upon itself in order to limit civil liability rather than imposing safety requirements upon its personnel that may far exceed those followed by comparable institutions." *Briggs*, 481 F.3d at 848 (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 435 (D.C. 2000)); *see also, e.g.*, *Montgomery*, 2026 WL 880250, at *3 ("[T]he district court correctly held that the WMATA

procedures were insufficient, in themselves, to establish the national standard of care."); *Thomas*, 2024 WL 4103706, at *5 (rejecting argument that WMATA's standard operating procedures established the standard of care). The same logic extends to plaintiff's argument about the bus driver's alleged failure to comply with posted warning signs, *see* Opp'n at 10—plaintiff has not established that the warning signs were consistent with the national standard of care.

Plaintiff's failure to produce an expert establishing the national standard of care is therefore fatal to his negligence claim, and I will grant summary judgment to WMATA on this ground.

## III. Contributory Negligence and Assumption of Risk

Defendant has also moved for summary judgment on its two affirmative defenses, contributory negligence and assumption of risk. I will deny summary judgment as to both defenses because they are best suited for resolution by a jury.

Typically, "[u]nder the District's substantive tort law, a plaintiff's contributory negligence is a complete bar to recovery, as this jurisdiction does not recognize comparative negligence." *W.M. Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 653 n.13 (D.C. 1996). "Common carrier liability," however, is an "exception" to the "complete bar" of contributory negligence. *Whiteru v. Wash. Metro. Area Transit Auth.*, 25 F.4th 1053, 1059 (D.C. Cir. 2022). Since WMATA is a common carrier, even if contributory negligence applied, it would not necessarily be a complete defense to plaintiff's claim. *See id.*

In any event, "[c]ontributory negligence is an affirmative defense, and thus it is the

defendant's burden 'to establish, by a preponderance of the evidence, that the plaintiff failed to exercise reasonable care.'" *Id.* at 1058 (quoting *Poyner v. Loftus*, 694 A.2d. 69, 71 (D.C. 1997)). "Contributory negligence is conduct which falls below the standard to which a plaintiff should conform for his own protection." *Id.* (quoting *Wash. Metro. Area Transit Auth. v. Cross*, 849 A.2d 1021, 1024 (D.C. 2004)). "[T]he District of Columbia Court of Appeals has made it abundantly clear that contributory negligence is almost always a question of fact for the jury," *Jeffries v. Potomac Dev. Corp.*, 822 F.2d 87, 91 (D.C. Cir. 1987), absent the "unusual case" when "only one conclusion reasonably could be drawn from the evidence," *Rich v. District of Columbia*, 410 A.2d 528, 532 (D.C. 1979).

A "reasonable jury could reach either conclusion" on the issue of plaintiff's contributory negligence. *Murphy-Holman v. Wash. Metro. Area Transit Auth.*, 2026 WL 2198916, at *6 (D.D.C. July 30, 2026). Plaintiff's contributory negligence due to his failure to ask the driver to secure his scooter or to move off his scooter into an available seat is not so "clear and undisputed that fair-minded men can draw only one conclusion." *Krombein v. Gali Serv. Indus., Inc.*, 317 F. Supp. 2d 14, 18 (D.D.C. 2004) (quoting *Paraskevaides v. Four Seasons Wash.*, 292 F.3d 886, 893 (D.C. Cir. 2002)). Summary judgment to WMATA would be warranted only if it was "negligence, *as a matter of law*, for" disabled passengers to fail to ask for their mobility scooters to be secured or to remain seated on an unsecured mobility scooter, *Paraskevaides*, 292 F.3d at 893, and defendant has not carried its burden here.

For similar reasons, I will deny defendant's motion as to assumption of risk. "Assumption of risk is an available defense when a plaintiff voluntarily has incurred a

known risk." *Maalouf v. Swiss Confederation*, 208 F. Supp. 2d 31, 43 (D.D.C. 2002) (quoting *Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980)). The elements of the defense are: "(1) that there was available to the [plaintiff] an alternative to encountering the risk; (2) that the [plaintiff's] choice between the risk and such alternative was fully voluntary; (3) that such alternative afforded the [plaintiff] the safety mandated by statute, rule or regulation; and (4) that the [plaintiff's] determination to encounter the risk was, under the circumstances, made with willful, wanton, or reckless disregard for his own safety." *Id.* (quoting *Jarrett v. Woodward Bros.*, 751 A.2d 972, 986 (D.C. 2000)).

"Typically, the determination as to whether or not a plaintiff assumed the risk is a question of fact usually to be determined by the jury." *Morrison v. MacNamara*, 407 A.2d 555, 568 (D.C. 1979). "The analysis is 'heavily fact-based,' and the court should grant summary judgment 'only if no real dispute exists as to the plaintiff's awareness of the relevant danger.'" *Krombein*, 317 F. Supp. 2d at 20 (quoting *Maalouf*, 208 F. Supp. 2d at 42). "[A]ssumption of risk applies where the plaintiff '*subjectively* knows of the existence of the risk and appreciates its unreasonable character.'" *Id.* (quoting *Jarrett*, 751 A.2d at 986).

While plaintiff was "concerned for his safety because the scooter had not been strapped in and was facing the rear of the bus," DSUMF ¶ 20, defendant has not established that plaintiff "had a full comprehension and appreciation of the danger" versus a "simpl[e] aware[ness] of the risk," *Bell v. Elite Builders & HVAC Inc.*, 949 F. Supp. 2d 143, 148 (D.C. 2013) (internal quotation marks omitted). As defendant acknowledges, "Plaintiff's wife testified that they collectively assumed that it was *safer* to have Plaintiff continue to

sit on his scooter despite their concerns." Mem. at 23 (emphasis added); *see also* PSMF ¶ 11 ("While Plaintiff was initially concerned this scenario caused safety issues, the bus driver's casual and dismissive demeanor led Plaintiff to eventually conclude that he was being overly worried."). Therefore, factual disputes remain as to plaintiff's assumption of the risk.

## CONCLUSION

For the foregoing reasons, I **GRANT IN PART** defendant's Motion for Summary Judgment on failure to establish a national standard of care and **DENY IN PART** defendant's motion as to the affirmative defenses of contributory negligence and assumption of risk. An accompanying order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge